**Reginald Derwin BROWN, Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 12–95–00255–CR.**

Court of Appeals of Texas,
Tyler.

July 30, 1996.

Discretionary Review Refused Jan. 22, 1997.

Gary A. Udashen, Dallas, for appellant.

Edward J. Marty, Tyler, for appellee.

PER CURIAM.

Appellant is currently under indictment for the offense of sexual assault. This is an accelerated appeal from the denial of his pretrial application for habeas corpus relief. We will affirm.

## I. BACKGROUND

In November of 1994, prior to Appellant's first trial under the instant indictment, the trial court signed orders granting Appellant's Motion to Produce Exculpatory Evidence and Mitigating Evidence and Motion for Production of Grand Jury Testimony and Production of Victim's Video Statement. In compliance with the trial court's order on grand jury testimony ("Grand Jury Testimony Order"), the prosecutor thereafter turned over to Appellant's counsel, copies of the transcriptions for several grand jury witnesses; however, one particular witness' transcription, that of Linda Royal, was not turned over to him until after the trial had already progressed through much of the punishment phase. Upon reading Royal's testimony, Appellant's counsel discovered that it contained exculpatory evidence; thus, he moved for and received a mistrial. Subsequently, the case was reset for trial, and Appellant sought habeas corpus relief assert-

ing that a second trial violated his rights under the double jeopardy clauses of the Texas and U.S. Constitutions.

## II. THE HABEAS CORPUS HEARING & RESULTANT ORDER DENYING RELIEF

At the hearing on the merits of Appellant's application for writ of habeas corpus, Appellant called three witnesses. First, Appellant called his local trial counsel, Clifton Roberson, who testified that from time to time, on trips to the district attorney's office to talk with the prosecutor, he would be handed copies of whatever grand jury transcripts were available at that time. He, further testified that prior to voir dire, his co-counsel, William Ravkind, asked the State if there were any additional grand jury transcripts they had not received. At that time, they were handed one or two additional transcripts. Further, on the day trial began, the defense was given some other transcripts. Royal's transcript was not among these new transcripts, and they did not specifically ask for it. Roberson testified that the defense did not receive Royal's transcript until they were at the punishment phase of trial. On cross-examination Roberson was asked whether James Mills, the prosecutor at trial, had ever "hidden the ball" from him or had been known to have intentionally "hidden the ball" from other defense lawyers during prosecution of a case. Roberson stated, that while he did not believe Mills had ever hidden the ball from him, he had heard other lawyers accuse Mills of such conduct.

As his second witness, Appellant called his other trial attorney, William Ravkind. Ravkind testified that he did not clearly recall the exact events which produced Royal's testimony, but he believed that upon learning that Royal was listed as a State's witness, he informed the trial court that they had not yet received Royal's grand jury testimony. At that point, the prosecutor handed over Royal's testimony to the defense. Thereafter, Ravkind's legal assistant began reviewing Royal's testimony, and she then directed his attention to the fact that it was exculpatory in nature. Ravkind admitted that he had already been privy to most of the information

contained in Royal's grand jury testimony through information his investigator had obtained from Royal. Ravkind testified, however, that not knowing her grand jury testimony existed, he had chosen not to call her as a witness because he had assumed she would deny what she had told the investigator. He, however, stated that if he had possessed her grand jury testimony, he would have felt comfortable calling her to the stand, and she would have been their most critical witness. Ravkind also testified that he had heard Royal had testified before the grand jury, but he stated he did not believe it since he had not received her testimony.

As its final witness, Appellant called Doretha Anderson, Ravkind's legal assistant. Anderson testified that when she saw Royal's name listed as a witness for the defense at the punishment phase, she reminded Ravkind that they had never received her grand jury testimony. At that point, Ravkind informed the trial court that they had not received it, and the prosecutor immediately handed it over to them. Thereafter, the State asked Anderson what had made her decide to ask whether or not they had received the grand jury testimony of Royal, and she replied: "Because I remember the Bishop [Appellant] specifically asking me if we had received that several times during the course of trial preparation, and when I saw her name on the witness list, I remembered that we had not received it, and I told Mr. Ravkind." Although on cross-examination both of Appellant's attorneys were asked to list which grand jury transcripts were actually received before trial, neither of them was able to provide that information even after being given an opportunity to examine their files.

After the defense rested, the State called James Mills, the prosecutor at trial, as its sole witness. Mills testified that at the time of the first trial, he was the only prosecutor in the 7th District Court. As such, he was responsible for compliance with discovery orders in addition to his other duties. Mills testified that the Smith County District Attorney's office had an "open file" policy. He further testified that to the best of his recollection, in compliance with the trial court's order to produce grand jury testimony, he instructed the court reporter to transcribe the grand jury testimony. Thereafter, he described handing the information over to the defense as follows:

> I want to say that he [Roberson] came up to the DA's office into my office, and I had all of the Grand Jury testimony—the originals and the copies all in one big pile, we went through, and I handed him a copy of each one. I think that happened in my office, but it could have happened down here, but as I recall, I remember going through them in my office and handed them to him up there.

Mills further testified that he had not been the one who presented the witnesses to the grand jury in the instant case, and he had read only the transcript of one grand jury witness, Fannie Moore, whose transcribed testimony had been in the State's file before the other testimony was ever transcribed. Mills also testified that he was present during Ravkind's opening statement wherein he summarized the content of Royal's grand jury testimony, then promised the jury "we'll show you all of this." On cross-examination, Mills stated that prosecutor Richard Kennedy, who had presented the witnesses to the grand jury, was in charge of questioning the witnesses at the punishment phase of trial. According to Mills, he was sure that he had discussed what witnesses would testify at the punishment phase, but he had no independent recollection as to why Royal ended up on the list of witnesses. Additionally, he stated that until he found both the copy and the original sitting on the table in the courtroom, he believed that he had turned over Royal's testimony to the defense prior to trial. When asked whether he had also turned over some other copies of transcripts to the defense at the commencement of trial, Mills stated: "I don't know. I might have. I'm not sure. I don't know." When asked what made him think he had turned over Royal's testimony before trial, Mills stated:

> Because I had given him all of the other testimony, and I did not—I just can't imagine that I would skip one. I mean, it just—I don't think that I did that. I mean, I know I didn't do it intentionally,

and I don't think I would have done it accidentally.

Additionally, Mills pointed out that given everything that Ravkind said about Royal in his opening statement, he thought the defense had her grand jury testimony. Mills explained that at trial, when the judge asked whether he had turned over Royal's testimony to the defense, he immediately stated that he had not done so because when he looked down onto the table, "it was still in there," and he just assumed he must not have given it to them. When asked by the defense whether he knew who Royal was, he stated that prior to trial, he only knew she had testified before the grand jury. During trial, however, he stated that "I knew that she had testified in front of the grand jury, and I knew—I knew from Mr. Ravkind's opening statement and his argument and his statements throughout the trial what her relevance to the case was." According to Mills, despite the defense's allusions to Royal and her apparent usefulness as a defense witness, he was not prompted to go and read her grand jury testimony. He, however, admitted having made reference to the content of Royal's grand jury testimony during his closing argument.

On re-direct examination, Mills stated that it was possible he had given the original and a copy of Valerie Asberry's testimony to the defense and inadvertently not given them another transcript they were entitled to. He further stated that the first time he became aware that the defense did not have Royal's testimony was when he walked into the courtroom, and they were telling the trial judge that they did not have it.

Following arguments of counsel, the trial court took the case under advisement. Subsequently, on October 10, 1995, the trial court signed an Order Denying Application for Writ of Habeas Corpus which contained findings of fact and conclusions of law in support thereof. A copy of that order is attached hereto as "Appendix A."

### III. APPELLANT'S COMPLAINT UNDER TEXAS' DOUBLE JEOPARDY CLAUSE

By his first point of error, Appellant alleges that under the Court of Criminal Appeals recent decision in *Bauder v. State,* No. 1058–94 (Tex.Cr.App.1995, December 6, 1995), his retrial is barred by Article I, Section 14 of the TEXAS CONSTITUTION.[1]

#### A. STANDARD OF REVIEW

■ In an appeal from a habeas corpus proceeding where the trial court has declined to bar retrial after the defendant moved for and received a mistrial, we must review the trial court's order to determine if its decision is clearly erroneous. *Ex parte May,* 852 S.W.2d 3 (Tex.App.—Dallas 1993, pet. ref'd). In *May,* the court stated:

> We look to the record to see if the record leaves us with the definite and firm conviction that the trial court made a mistake. [citation omitted] The clearly erroneous standard accords great deference to the trial court's findings and conclusions. This is so because the trial court bases its rulings in part upon a credibility determination that is not reviewable by the appellate court. [citation omitted] We view the evidence in the light most favorable to the trial court's ruling. [citation omitted].

*Id.,* 852 S.W.2d at 5.

#### B. THE *BAUDER* DECISION

In *Bauder,* the State's first two attempts to try the appellant for D.W.I. ended in mistrials. The second mistrial was caused when the prosecutor introduced evidence in front of the jury, which showed that the

1. The *Bauder* opinion upon which Appellant relies was delivered on December 6, 1995. On May 8, 1996, however, the Court of Criminal Appeals withdrew its previous opinions in that cause and issued a new opinion in their stead. In so doing, it modified its holding with regard to the type of prosecutorial conduct that bars a successive prosecution under the Texas double jeopardy clause. Since the issuance of that new opinion, the parties have presented oral argument incorporating the reasoning contained in the May 8, 1996 opinion, and the State has filed a supplemental brief addressing the holding therein. Accordingly, Appellant's arguments under the December 6, 1995 opinion will now be considered in light of the May 8, 1996 *Bauder v. State,* 921 S.W.2d 696 (Tex.Cr.App.1996) opinion, and all further references herein shall be to the latter opinion.

appellant had committed misconduct other than that charged in the information. Before a third trial was scheduled, the appellant sought habeas corpus relief contending that further prosecution was jeopardy barred under the state and federal constitutions. Interpreting both double jeopardy clauses under federal constitutional law, the trial court found that while the prosecutor had deliberately adduced the testimony of extraneous conduct, he had not done so to goad the appellant into a mistrial. Thus, it concluded, since the appellant himself had moved for mistrial, a successive prosecution was not jeopardy barred. *Bauder*, 921 S.W.2d at 699. The court of appeals affirmed, and the Court of Criminal Appeals thereafter granted discretionary review to determine whether the double jeopardy clause in Article I, Section 14 of the TEXAS CONSTITUTION applies to mistrials provoked by the prosecutor in exactly the same way as the double jeopardy clause contained in the Fifth Amendment to the UNITED STATES CONSTITUTION.

The Texas Double Jeopardy Clause provides that "[n]o person, for the same offense, shall be twice put in jeopardy of life or liberty, nor shall a person be again put upon trial for the same offense, after a verdict of not guilty in a court of competent jurisdiction." TEX. CONST., art. I, § 14. After careful consideration, the Court of Criminal Appeals concluded that the double jeopardy clause of the Texas Constitution provides greater protection than the parallel provision of the U.S. Constitution. *Bauder.* In so holding, the court reasoned that under the Texas' double jeopardy clause:

> [A] successive prosecution is jeopardy barred after declaration of a mistrial at the defendant's request, not only when the objectionable conduct of the prosecutor was intended to induce a motion for mistrial, but also when the prosecutor was aware but consciously disregarded the risk that an objectionable event for which he was responsible would require a mistrial at the defendant's request.

*Bauder*, 921 S.W.2d at 699. In so holding, the Court of Criminal Appeals noted that "when a prosecutor's deliberate or reckless conduct renders trial before the jury unfair

to such a degree that no judicial admonishment can cure it, an ensuing motion for mistrial by the defendant cannot fairly be described as the result of his free election." *Bauder*, 921 S.W.2d at 698. It further reasoned that unlike the Supreme Court, it did not think the prosecutor's specific intent was a "relevant aspect of inquiry" because, regardless of the intent, the defendant was still harmed by being deprived of his right to be tried in a single proceeding by the jury first selected. *Id.* The court, however, stated that where the trial court need not have granted the defendant's motion, the prosecutor was not to be accountable for a mistrial. *Id.*

## C. WHETHER THE CASE SHOULD BE REMANDED TO THE TRIAL COURT FOR REVIEW OF ITS FINDINGS IN LIGHT OF *BAUDER*

■ Appellant argues that since the trial court did not have the benefit of the *Bauder* decision at the time it ruled on his application, the case should be remanded to the trial court for reconsideration under *Bauder*, or alternatively, that the trial court's order should be reversed on grounds that under *Bauder*, the evidence requires that the second prosecution be barred. The State argues that the trial court's findings of fact and conclusions of law are amenable to review in light of *Bauder*, and thus, the case need not be sent back for reconsideration; it also asserts that the evidence adduced at the hearing withstands scrutiny under *Bauder*. The court's opinion in *Bauder* gives no guidance as to whether appellate courts should remand to the trial court or render judgment at the appellate level. Given, however, the nature and specificity of the trial court's findings of fact and conclusions of law, we see no need to remand the case. Thus, we will examine the trial court's findings of fact and conclusions of law in light of *Bauder* and the record before us.

## D. APPELLANT'S DISPUTE WITH THE TRIAL COURT'S FINDINGS

■ In the instant case, the trial court made numerous findings of fact and conclusions of law. While some of these findings were not necessary to the disposition of the habeas proceeding, we find none of them

clearly erroneous. Specifically, in findings 9 and 10, which are critical to this case, the trial court stated that the prosecutor's failure to provide the defense with Royal's testimony was neither intentional nor grossly negligent. Appellant argues that a close review of the record demonstrates that the evidence did not support these findings. We disagree.

These findings are supported by the following evidence: (1) The prosecutor testified that he had not read the grand jury transcripts, so he did not know what they (including Royal's transcript) contained; (2) the trial court ordered that all grand jury testimony transcripts be given to the defense; (3) Mills thereafter made the necessary request that the grand jury testimony be transcribed; (4) it is undisputed that on one or more occasions Mills delivered several copies of grand jury transcripts to the defense; (5) Mills delivered what he believed were copies of all of the transcripts he had in his possession; (6) none of the defense witnesses could identify which grand jury transcripts had actually been received before and during trial; they only knew that Royal's testimony was not among them; (7) the defense freely referred to the contents of Royal's testimony during its opening statement, and thereafter, promised the jury that it would put on evidence in support of its opening statement; (8) from the defense's references to Royal's testimony, the prosecution could easily have concluded that the defense already had a copy of Royal's grand jury testimony; and (9) Mills affirmatively stated that he thought he had turned Royal's testimony over to the defense along with other grand jury transcripts and that he had not intentionally withheld Royal's testimony from the defense.

Despite the evidence presented at the hearing, Appellant attacks the court's findings and conclusions as clearly erroneous on the basis that the prosecutor's failure to read all of the grand jury testimony in search of exculpatory evidence constituted intentional or grossly negligent conduct which caused the instant mistrial. We disagree with this argument. Given the fact that the trial court

had already ordered the State to produce all grand jury transcripts to the defense, it was not the prosecutor's failure to read the transcripts that resulted in his failure to turn all of them over to the defense. Regardless of the transcripts' content, the prosecutor was required under the court's Grand Jury Testimony Order to produce the transcripts, and the evidence shows that he thought he had done so.

### E. APPELLANT'S COMPLAINT THAT THE TRIAL COURT'S ASSESSMENT OF THE EVIDENCE MIGHT NOT SUFFICE UNDER *BAUDER*

■ In addition to his attack on the trial court's evidentiary findings, Appellant suggests that because the trial court did not have the benefit of *Bauder*, the validity of its decision is undercut. *Bauder* provides that a mistrial caused by either intentional or reckless conduct on the part of the prosecutor may bar further prosecution under Article I, Section 14 of the TEXAS CONSTITUTION. Here, the similarities between the trial court's actual analysis and the requirements of *Bauder* do not cease with review of the intentional conduct issue. The trial court also examined the evidence for gross negligence or reckless indifference on the part of the prosecutor. In this latter regard, the trial court's finding that Mills did not act with "gross negligence" in failing to turn over Royal's testimony is certainly akin to *Bauder's* requirement that a prosecutor not cause a mistrial through "reckless conduct" or by being "aware but consciously disregarding the risk" of mistrial. Moreover, in addition to the trial court's finding of no "gross negligence," the trial court stated in conclusion of law number 4:

Unless the State's failure to provide an exculpatory transcript until the beginning of the punishment phase of a trial is either intentional or *at least, with reckless indifference to its duty to divulge exculpatory information,* manifest necessity would require a mistrial during the punishment phase but would not evoke double jeopardy protection precluding further prosecution of the Defendant.[2] (emphasis added)

**2.** Following this conclusion, the trial court denied Appellant's application for habeas corpus

relief.

Given this conclusion, and the trial court's subsequent denial of Appellant's application, the trial court's order also contains an implicit finding that the prosecutor had not acted with "reckless indifference" in failing to deliver Royal's grand jury testimony to the defense.[3] This implicit finding is likewise supported by the evidence enumerated above. Consequently, the trial court's analysis satisfies the requirements of *Bauder*.

### F. CONCLUSION AS TO APPELLANT'S FIRST POINT OF ERROR

Thus, being satisfied that the trial court probed into the issues necessary to evaluate Appellant's jeopardy claim under *Bauder*, and having found evidence to support the trial court's findings that the prosecutor did not cause the mistrial intentionally, through gross negligence or through reckless indifference, we cannot say that the trial court clearly erred in denying Appellant's request for habeas corpus relief. Accordingly, Appellant's first point of error is overruled.

### IV. APPELLANT'S COMPLAINT UNDER THE U.S. CONSTITUTION'S DOUBLE JEOPARDY CLAUSE

■ By his second point of error, Appellant alleges that the trial court erred in denying his application for writ of habeas corpus under the double jeopardy clause of the United States Constitution. As Appellant notes, under *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416 (1982), where a defendant requests a mistrial, the double jeopardy clause bars further prosecution only where the mistrial was the result of bad faith prosecutorial conduct. Here, having found in point one that the prosecutor neither intentionally nor recklessly caused a mistrial, it stands with greater reason that the evidence does not support a

finding that the prosecutor acted with bad faith to bring about the mistrial. Moreover, even if we were persuaded by Appellant to disagree with the Court of Criminal Appeals' assessment that *Kennedy* requires a showing that the prosecutor intentionally goaded the defendant into moving for mistrial and we instead applied the *Bauder* standard to the instant case, under our reasoning in point one, Appellant's claim would still be without merit. Consequently, Appellant's second and final point of error is overruled.

### V. CONCLUSION

Having found Appellant's arguments without merit, we affirm the trial court's Order Denying Application for Writ of Habeas Corpus.

Opinion issued July 30, 1996.[4]

### "APPENDIX A"

### ORDER DENYING APPLICATION FOR WRIT OF HABEAS CORPUS

ON THIS DAY came on to be considered the Defendant's Application for Writ of Habeas Corpus and having considered all matters in evidence, the pleadings, taking judicial notice of the Court's own file, and after arguments and case law submitted by counsel, the Court makes the following findings of fact and conclusions of law:

FINDINGS OF FACT

1. The State was under an affirmative duty to divulge all exculpatory information of which it had possession.

2. The State was directed to and agreed to obtain and divulge to the Defendant all testimony recorded before the Grand Jury in this case.

---

**3.** Section 6.03(c) of the TEXAS PENAL CODE defines "recklessness" as follows:

A person acts recklessly, or is reckless, with respect to circumstances surrounding his conduct or the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the circumstances exist or the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person

would exercise under all the circumstances as viewed from the actor's standpoint.

Thus, this definition for "reckless" employs the same language used by the *Bauder* court in defining the type of prosecutorial conduct that would prohibit further prosecution under the State's double jeopardy clause after a mistrial on defendant's motion.

**4.** *Panel consisted of Ramey, Jr., C.J., Holcomb, J., and Hadden, J.*

3. The State had an "open file" policy regarding discovery on cases which included the present case.

4. Each time a Defendant's Attorney made a trip to the District Attorney's Office, he received transcripts as they became available.

5. Linda Royal was listed as a potential witness by the State.

6. The Defendant's Attorneys could not say for certain what had been received and what had not.

7. The Defense had been aware of exculpatory statements made by Linda Royal to which the Defendant's Attorney referred in statements to the jury prior to presentation of evidence in the case in chief.

8. The State's Attorney, James Mills, who tried the guilt-innocence phase of this present case did not read the grand jury testimony of Linda Royal.

9. The State's Attorney did not intentionally withhold the Grand Jury testimony of Linda Royal from the Defendant.

10. The State's Attorney was not grossly negligent in failing to provide the transcript of Linda Royal's Grand Jury testimony.

11. The State's Attorney actually believed he had turned over everything in the State's possession to the Defense before trial.

12. Because of the reference by Defendant's Attorney in front of the Jury Panel to exculpatory statements made by Linda Royal, the State's Attorney was mistakenly led to believe the Defense was fully aware of Linda Royal's past and potential future testimony.

13. The State mistakenly gave the Defense both the original and copy of the Grand Jury testimony of Valerie Asberry leaving the State without either one.

14. The State's Attorney was under the impression Linda Royal's Grand Jury testimony had been provided to Defense, until it was mentioned in open court that it had not been received.

15. Upon the Defendant's Attorney asking for Linda Royal's transcript in open Court, the State's Attorney thumbed through its copies of testimony stacked on the corner of the State's table nearest to Defense table, and found both an original and copy of Linda Royal's testimony, at which time said transcript was handed to the Defense in open court.

CONCLUSIONS OF LAW

1. The State had an obligation to disclose any exculpatory material of which it was aware or had in its possession to the Defendant.

2. When the State has an "open file" policy of allowing the Defendant to review any and all material in its possession regarding the case and receive copies thereof, the State is not under a duty to discern which of the material in its possession is exculpatory and which is not.

3. When the State's "open file" policy is to allow the Defense to review all materials in its possession and receive copies thereof, the Defense may then discern which of the materials made available are in its opinion exculpatory and which are not.

4. Unless the State's failure to provide an exculpatory transcript until the beginning of the punishment phase of a trial is either intentional or at least, with reckless indifference to its duty to divulge exculpatory information, manifest necessity would require a mistrial during the punishment phase but would not evoke double jeopardy protection precluding further prosecution of the Defendant.

Accordingly, it is hereby Ordered, Adjudged, and Decreed that the Defendant's Application for Writ of Habeas Corpus is in all things <u>DENIED,</u> and the case is reset for trial on the <u>13th</u> day of <u>November,</u> 199<u>5</u> at 9:00 o'clock a.m.

Signed on this the <u>10</u> day of October 1995.