Alcario **BARRIOS**, Jr., Appellant,

v.

The **STATE** of Texas, Appellee.

No. 01–98–00872–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 31, 2000.

Debora L. Perkey, Galveston, for Appellant.

John Julian Moore, Columbus, for State.

Panel consists of Chief Justice SCHNEIDER and Justices ANDELL and DUGGAN.*

## OPINION

LEE DUGGAN, Jr., Justice (Retired).

A jury found appellant, Alcario Barrios, Jr., guilty of possession of not less than 200 grams, nor more than 400 grams of cocaine, and the court assessed his punishment at 50–years confinement. Appellant urges two points of error on appeal. We affirm.

In his first point of error, appellant asserts the trial court erred in denying his motion to suppress the contraband seized illegally from his home. He argues that officers obtained a warrant to search his home and truck for a described shotgun, and entered his home to search for drugs on the pretext of searching for the weapon, when he had, in fact, already shown them the weapon in his truck when he was arrested in the truck away from his home.

* The Honorable Lee Duggan, Jr., retired Justice, Court of Appeals, First District of Texas

## I.

### FACTUAL BACKGROUND

A Colorado County reserve deputy sheriff, employed in an Eagle Lake sporting goods store, recognized appellant as a possible felony probationer when he came into the store and purchased a shotgun. The employee notified the Eagle Lake police chief, who in turn notified Officer Johnny L. Gray of the 25th Judicial District Narcotics Task Force (the "task force"), a state law enforcement agency. Before a search warrant could be obtained, Crime Stoppers in Eagle Lake received and forwarded to Officer Gray information from an anonymous phone call implicating appellant in illegal drug activity.

Officer Gray prepared an affidavit and obtained a warrant to search appellant's residence and truck for the shotgun, seize it, and arrest appellant. Gray's warrant affidavit did not mention the Crime Stoppers' tip, or the possibility of drugs. Officers testified at the suppression hearing that they had no probable cause to believe appellant possessed illegal drugs. As issued, the warrant directed officers to search appellant's residence and vehicle for a "Winchester model 1300 12 gauge shotgun serial number L3137460."

The task force took over the execution of the warrant, and 10 to 12 officers, travelling in seven vehicles, proceeded to appellant's residence. En route, one of the participating deputies recognized appellant's pickup at an intersection approximately one-half mile away from the residence, and notified other officers by radio. All of the officers except the four-member "entry" team turned aside and stopped the pickup, which appellant was driving, and took him into custody. The entry team continued to appellant's residence, effected entry, and secured the premises before appellant, his wife and children, and the three carloads of officers arrived. Appel-

at Houston, participating by assignment.

lant was brought to his residence in one of the police vehicles, while one of the officers drove appellant's truck.

At appellant's residence, officers brought appellant inside and seated him at a kitchen table. After placing a copy of the warrant before him and giving him his *Miranda* warning, officers questioned him. After the conversation, Officer Gray found a digital electronic scale (commonly used to weigh cocaine) and a packet of crack cocaine on one shelf of a kitchen cabinet, and a bag containing two envelopes of cocaine behind a toaster on another shelf in the same cabinet.

Although testimony conflicted as to when it was discovered, the shotgun described in the warrant, along with ammunition, was later recovered from behind the driver's seat in appellant's pickup truck. Officer Gray, who found all of the items, determined that the shotgun's serial number matched the number listed in the warrant.

Appellant filed a motion to suppress the cocaine and scale, challenging the legality of the search of his residence because, he contends, officers knew the whereabouts of the shotgun in his pickup truck before the search. The trial court denied this motion at a pre-trial hearing, and again when it was reurged at the close of evidence. Appellant's motion for new trial, based on newly-discovered evidence, was also denied.

## II.

## DISCUSSION

**A. Whether the trial court abused its discretion in denying the suppression motion**

Testimony by police officers sharply conflicted with that of appellant and his wife about when the shotgun was discovered. Officer Gray testified that when the officers stopped appellant's vehicle, they neither told him why he was being arrested under a warrant—contrary to their standard practice—nor searched his vehicle at the scene. Instead, they removed the occupants from the truck, and an officer drove the vehicle to appellant's residence. Gray testified that it is common practice not to search a vehicle on the road when executing a search warrant because of safety concerns. Narcotics Task Force Commander Keith Majors also testified that it was standard operating procedure for task force officers to take a vehicle back to a residence for a search if the vehicle is located away from the residence.

Once appellant was brought inside the residence, Majors testified that he identified himself to appellant as Commander of the 125th Judicial District Drug Task Force and gave appellant a copy of the warrant. The warrant did not state on its face either the offense for which appellant was being arrested or the item to be seized. However, both were shown in the affidavit to the warrant.[1] Majors testified that he did not refer to the shotgun at this point. Instead, after reading appellant his *Miranda* warnings and hearing his acknowledgment that he understood his rights, Majors stated something to the effect of "You know why we are here," or "You know what we are here for." Majors acknowledged he and the officers who made the initial arrest did not follow policy or standard operating procedure when they failed to tell appellant what they were looking for or why he was being arrested.

Majors testified that appellant then volunteered the location of the contraband,

---

1. No complaint is made that the warrant is invalid because it merely incorporates by reference to the affidavit the information required by statute. *See generally Turner v. State,* 886 S.W.2d 859, 864 (Tex.App.—Beaumont 1994, pet. ref'd) (observing that "a warrant that does not contain the basic informa-

tion required by art. 18.04 [of the Texas Code of Criminal Procedure] can nevertheless be valid so long as the warrant incorporates by reference the affidavit and said affidavit does contain all of the information required by art. 18.04").

saying, "It is in there behind, it is in the kitchen cabinets." According to Majors, the size and shape of the kitchen cabinets were such that the shotgun could have been hidden in them.[2] Officer Gray testified that he looked in the cabinet because appellant "pointed to the cabinets and said it was in there." In the cabinet, Gray found a digital electronic scale commonly used to weigh cocaine, together with a packet of crack cocaine. Majors and Gray both testified that appellant then added, "Behind the toaster." Responding, Gray then found a bag containing two envelopes of cocaine.

Gray testified that when the officers did not find the shotgun in the cabinet or elsewhere in the residence, he asked appellant where it was. Only then—after the contraband drugs were found and seized—did appellant tell him it was in his pickup truck behind the seat. Gray testified that he then went outside to the truck, found the shotgun and ammunition hidden behind the seat, and determined that the serial number on the gun matched the one set out in the warrant. Gray testified that the gun was in the original box and was not visible until the seat was moved forward.

In sharp contrast to the officer's testimony, appellant and his wife both testified that when they were stopped in the truck, the officers told appellant he was under arrest for being a felon in possession of a firearm. Both stated that appellant was asked at the arrest scene if he had a weapon or large amounts of money or drugs and he responded, "I have a shotgun in the back seat." Appellant testified that as he got out of the truck, he moved the seat forward and showed the officers the box containing the shotgun, and that at least three officers glanced briefly at the shotgun. Appellant acknowledged that only later, after the search at his home, did

officers actually remove the shotgun from his truck. Appellant agreed that, after he was given a *Miranda* warning, Commander Majors introduced himself as head of the task force and said, "You know why we are here"; however, appellant denied that he answered or pointed out any contraband.

Evidentiary rulings are generally reviewed under an abuse of discretion standard. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Because the testimony conflicted as to what happened after appellant was stopped in his truck, we must show almost total deference to the trial court's findings of fact, "especially when those findings are based on an evaluation of credibility and demeanor—*i.e.*, . . . the appellate courts should view the evidence in the light most favorable to the trial court's ruling." *Id.* at 89.

Appellant does not dispute the general rule that appellate courts must defer to a trial court's fact findings; however, he urges that this situation is the exception because the officers put forth an "implausible" account, which required the trial court to accept an "illogical scenario" of arrest and search events.

Because the trial court issued no findings of fact with its decision denying the motion to suppress, we must construe the evidence in a way that supports the trial court's ruling.

Under appellant's version of events, the officers found the object of their search, the shotgun, before they entered appellant's residence. If the officers knew that the shotgun was in the truck, they lacked probable cause to search the residence pursuant to the warrant for the shotgun. *See generally Joseph v. State*, 807 S.W.2d 303, 307 (Tex.Crim.App.1991) (observing that "[t]he scope of a search . . . is re-

---

**2.** However, the officers uniformly denied that appellant was told he was being arrested for being a felon in possession of a shotgun. Interestingly, as is set out later, appellant insists he was told at the scene of his arrest that he

was charged with being a felon in possession of a firearm. If he had been so advised, he might reasonably have believed that a shotgun was "what we are here for."

stricted to the object of the search and the places in which there is probable cause to believe it may be found"). Thus, appellant's version of the facts, if accepted by the court, would have entitled him to have the evidence suppressed.

Because the trial court accepted the officers' version of events, it apparently found that

(1) the officers did not tell appellant why he was being arrested when he was stopped, although standard operating procedure required them to do so;

(2) the officers at the arrest scene did not ask appellant where the shotgun was, although they knew the warrant directed them to seize it and arrest appellant for illegally possessing it;

(3) the officers did not search the truck for the shotgun at the scene of the arrest, although they could have done so if they chose;

(4) Commander Majors presented a copy of the search warrant to appellant at his residence but did not tell him its subject, although Majors acknowledged that the usual practice was to do so; and

(5) Commander Majors introduced himself to appellant as head of the Narcotics Task Force, stating "You know what we want" (or words to that effect), and asked where "it" was.

We disagree with appellant that the officers' version of the fact scenario—the account the trial court evidently agreed with—was implausible or illogical. The officers' conduct, both at the scene of the arrest and in their conversation with appellant in his home, was purposeful: utilizing the pretextual search warrant, they did not want to discover the shotgun, or have appellant disclose its whereabouts, before they conducted their search for drugs in those locations at appellant's residence where a shotgun—and drugs—might be kept.

The trial court undoubtedly understood that the officers' intent was to conduct a search for drugs (their subjective purpose, for which they had no probable cause) under the lawful, though pretextual, authority of the search warrant for the shotgun (their objective purpose).

■ That the objective purpose of the search was to locate and seize a shotgun did not render unlawful the officers' subjective purpose (for which they had no probable cause) to search for and seize illegal drugs. The United States Supreme Court has held that the seizure of property and arrest of persons in a traffic stop upon a pretextual reason is permissible if the pretextual reason is supported by probable cause. *See, e.g., Whren v. United States*, 517 U.S. 806, 819, 116 S.Ct. 1769, 1777, 135 L.Ed.2d 89 (1996) (holding that the seizure of property obtained on the pretext of a stop for a traffic violation was valid if the police had probable cause to believe there was a traffic violation).

Similarly, the Texas Court of Criminal Appeals applied an objective test in *Crittenden v. State* and held that "an objectively valid traffic stop is not unlawful under Article I, § 9, just because the detaining officer had some ulterior motive for making it." 899 S.W.2d 668, 673–674 (Tex. Crim.App.1993). Although *Crittenden* involved a traffic stop, not a search warrant, its language suggests that its reasoning applies equally to searches and seizures under a warrant.

The Corpus Christi Court of Appeals applied *Crittenden* to an arrest warrant, concluding that "[i]f an officer has an objectively valid reason for arresting an individual, that the officer has ulterior motives will not cause the arrest to be illegal under either federal or state laws." *Maestas v. State*, 963 S.W.2d 151, 158 (Tex.App.— Corpus Christi 1998), *aff'd*, 987 S.W.2d 59 (Tex.Crim.App.1999). *Maestas* determined that the defendant's arrest under a Colorado arrest warrant for felony escape was not invalid even if the officers' pri-

mary purpose was to investigate the defendant's involvement in a Texas murder. *Id.*

■ We find that *Crittenden's* objective approach for search and seizure questions is equally applicable to the context of a search warrant. Following *Crittenden's* reasoning, we hold that the task force officers were entitled to conduct a search pursuant to the search warrant for a described shotgun, regardless of their subjective motivations, so long as the warrant was supported by probable cause and the scope of the search did not exceed the warrant.

■ Appellant may have been misled into thinking the officers were present to search for drugs under the warrant because of the combination of events testified to by the officers: (1) their failure to tell appellant why he was being arrested on the road in his truck; (2) their action in providing him with a warrant, the object of which was not apparent from its face; (3) Majors's identification of himself as a Narcotics Task Force Commander, and (4) Majors's statement "You know what we are here for," followed by his question asking where "it" was.

Nevertheless, the officers were present where they had a right to be under the authority of the warrant, and were doing what they were legally authorized to do—arresting appellant pursuant to the authority of the warrant and questioning him without coercion after reading him *Miranda* warnings. Commander Majors's self-introduction as Commander of the 25th Judicial District Drug Task Force, his statement ("You know why we are here"), and his question ("Where is it?") were artfully stated and truthful, though deceptive.

Appellant does not contend his answer was involuntary or coerced, only that he did not answer. He does not dispute that he was given a copy of the search warrant and affidavit, and was read the *Miranda* warning before Commander Majors's question to him.

As the United States Court of Appeals, Fifth Circuit, has observed,

> Again and again, ... the [United States Supreme] Court has told us that where police officers are objectively doing what they are legally authorized to do—as in arresting [the defendant] pursuant to the valid warrant outstanding against him and interrogating him without coercion after reading him repeated *Miranda* warnings—the results of their investigations are not to be called in question on the basis of any subjective intent with which they acted.

*United States v. Causey,* 834 F.2d 1179, 1184 (5th Cir.1987).

The trial court did not err in overruling appellant's motion to suppress. Appellant's first point of error is overruled.

**B. Whether the trial court abused its discretion in allowing the prosecution to elicit testimony and argue about a "dealer" and cocaine purity**

In his second point of error, appellant asserts the prosecutor (1) repeatedly made reference to a hypothetical "dealer," and (2) elicited testimony about both the street value of cocaine and the purity of appellant's cocaine compared to that normally sold at street level. He argues that the evidence and argument were irrelevant and prejudicial because he was charged with possession only, not possession with the intent to distribute.

■ A challenge to the relevancy of evidence is reviewed for abuse of discretion. *Moreno v. State,* 858 S.W.2d 453, 463 (Tex. Crim.App.1993).

■ In the first instance about which he complains, appellant's counsel elicited from the State's chemist on cross-examination that the amount of pure cocaine in the samples he tested totalled no more than 174.92 grams, although appellant was indicted for possession of between 200 and 400 grams.

On redirect, the prosecutor elicited from the chemist for the first time that the amount of a controlled substance, for purposes of an indictment, includes adulterants or dilutants mixed in with the illegal substance.

The prosecutor continued, "So if a *dealer* had 175 grams—." (Emphasis added). Appellant objected, stating that there was "no evidence about a dealer," and asked "that the jury be instructed to disregard that." The prosecutor responded, "This is just a hypothetical case. If I could present it, Your Honor, I'll rephrase it." The trial court answered, "Rephrase it, please, and Jury, please disregard that."

■ The prosecutor continued and showed through the chemist that, for the purpose of figuring the weight described in the indictment, pure cocaine plus any adulterants or dilutants mixed with it are weighed together to determine the total amount of contraband. The jury is presumed to have followed the trial court's instruction to disregard the prosecutor's statement. *Gardner v. State,* 730 S.W.2d 675, 696 (Tex.Crim.App.1987). Appellant obtained the relief he sought, and no error is shown.

■ Appellant's second complaint is about the chemist's use of the word "dealer" during cross-examination. Appellant's counsel elicited the following:

**Defense**

**Counsel:** And when are adulterants and dilutants added to drugs?

**Chemist:** Any time the *dealer* wants.

**Defense**

**Counsel:** How about any time *anybody* wants to?

**Chemist:** That is true. We see stuff coming across the border now from Mexico that has already been stepped on.

(Emphasis added). Appellant's counsel elicited the word "dealer" from the chemist, and made no objection to the witness's answer. Having sought no relief from the trial court, appellant has preserved nothing for review. *See* Tex. R. App. P. 33.1(a).

Appellant's next two complaints are that the trial court erred in admitting irrelevant and prejudicial testimony from the chemist and Commander Majors about the purity of appellant's cocaine.

■ Appellant's complaint centers on the prosecutor's question as to what it would mean to the chemist if a tested sample contained only 25 percent pure cocaine. The chemist answered, "If it is that small, then it is already on the street being sold in nickel bags." Appellant made no objection to this question or answer. The prosecutor then asked whether someone with a quantity of 55 or 60 percent pure cocaine could "step on it again" and "double the amount he has got." The witness hesitated, and the prosecutor asked, "He can put it in a nickel bag and sell it on the street?" The witness answered, "Right." Appellant's attorney then objected, "As to the relevancy of what we are about here." The prosecutor responded that appellant had "opened the door," and the trial court overruled appellant's objection.

Appellant's objection was belated and untimely. Further, the line of questions was relevant because appellant had repeatedly suggested by earlier questions to the same witness that the cocaine seized from appellant had been tampered with and diluted after it came into the State's custody. The State's purpose in the series of questions was to prove that the purity of appellant's cocaine was higher than the purity of cocaine generally found on the street, rendering it unlikely the State or its agents had adulterated it after it came into custody. The question and answer were relevant, and no error is shown. *See, e.g., Davis v. State,* 979 S.W.2d 863, 867 (Tex.App.—Beaumont 1998, no pet.) (rejecting the appellant's relevance argument because, "[s]ince appellant's statement raised the defensive issue of consent, the State could introduce evidence that made 'less probable' that defensive issue").

Appellant's relevance objection to Commander Majors's testimony on the same subject was also correctly overruled for the same reason.

■ Appellant next complains of two instances of prosecutorial argument at the guilt/innocence phase. In this part of his argument, the prosecutor reminded the jury of testimony by the chemist and Commander Majors about the street level of cocaine purity in general, compared to the value of the cocaine in appellant's possession. Appellant failed to object to this argument at trial, and his complaint is waived. TEX. R. APP. P. 33.1(a); *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex.Crim.App. 1996).

■ Finally, appellant complains of testimony the prosecution elicited from Commander Majors during direct examination at the sentencing hearing.

**Prosecutor:** What is the statewide average for the State in calculating the value of cocaine?

**Defense**

**Counsel:** Your Honor, I'm going to object as to relevancy. That is not relevant.

**Prosecutor:** Judge, the relevancy that the State will show is that this Defendant is here to be sentenced for 328 grams of cocaine. It may help the Court—You can tell me if it would or not—in knowing the street value of that amount of cocaine.

**Defense**

**Counsel:** Your Honor, the charges are not possession with intent to distribute or deliver or anything else, so the relevancy certainly would not be applicable.

**Prosecution:** Possession is possession. The value of it may have something to do with sentencing.

**Court:** I am going to overrule the objection, ... and let's see how much this cocaine could have been worth. I understand it varies.

**Prosecutor:** What is the—is 15 percent cocaine a reasonable amount to assume about the quality of street level drugs? Would that be about right, 15 percent?

**Commander**

**Majors:** Yes it is.

**Defense**

**Counsel:** Your Honor, again we are making assumptions here that are not—There is no basis of value.

**Prosecutor:** It is just what the chemist testified to yesterday and what several other witnesses testified.

**Court:** I will overrule the objection.

Following some calculations, the prosecution eventually developed testimony that the value of the cocaine, based on the assumptions used by the witness, would total approximately $100,000.

Appellant argues that this testimony was irrelevant and unduly prejudicial. Under Texas Rule of Criminal Procedure 37.07(3), a sentencing judge can reasonably consider evidence of the quantity and value of contraband in a defendant's possession as "relevant to sentencing." *See* TEX. R. CRIM. P. ANN. art. 37.07(3) (Vernon Supp.2000). The evidence in question was admitted for that purpose; no error is shown.

Considering the context of these remarks, the trial court did not abuse its discretion in overruling appellant's objections.

Appellant's second point of error is overruled.

**C.** **Whether appellant is entitled to relief for issues newly raised in his reply brief**

Under the authority of Texas Rule of Appellate Procedure 38.3, appellant at-

tempts in his reply brief to raise new issues not addressed in his original brief. Rule 38.3 permits an appellant to address "any matter in the appellee's brief." TEX. R. APP. P. 38.3.

Appellant asserts for the first time in his reply brief that there was no probable cause to support issuance of the warrant for the shotgun. He claims to be responding to "the issue of the validity of the warrant, which was raised by the State." We disagree that the State raised the issue. The State's brief noted that appellant conceded the officers had a valid warrant to search for the shotgun.[3] For us to consider this to be "a matter in the appellee's brief" that appellant can address by reply brief would go beyond the permissible scope of rule 38.3. Pointing out the *absence* of an appellant's argument does not raise the argument or entitle appellant to assert that argument for the first time in his reply brief. If the rule were construed otherwise, an appellee could never point out matters not raised by an appellant for fear of reopening the door.

Appellant raises the new argument in his reply brief that the arresting officers were not acting in good faith in relying on the search warrant. The State had argued alternatively in its appellee's brief that, assuming *arguendo* that appellant's allegations were true that the shotgun was discovered in his vehicle before his residence was searched, the officers who searched appellant's residence nevertheless did so in good faith reliance on the search warrant. Because the trial court did not abuse its discretion in crediting the law enforcement officers' version of events over appellant's,

both the State's alternative good faith argument and appellee's reply argument are moot.

Alternatively, appellant requests permission to "brief these issues pursuant to Rule 38.7," which provides that a "brief may be amended or supplemented whenever justice requires, on whatever reasonable terms the court may prescribe." TEX. R. APP. P. 38.7. Appellant does not explain why these issues were omitted from his original brief; however, he concedes that they were "not fully argued before the trial court below." We decline to address issues not submitted fully to the trial court. *See* TEX. R. APP. P. 33.1(a).

Appellant also urges us to treat the two new issues discussed above as fundamental error, to the extent that they are not within rule 38.3. He provides neither citation of authorities nor argument to explain why the issues constitute fundamental error, and, therefore, presents nothing for appellate review. *See State v. Gonzalez,* 855 S.W.2d 692, 697 (Tex.Crim.App.1993).

Finally, appellant asserts for the first time in his reply brief that his trial counsel provided ineffective assistance by failing to challenge the probable cause to issue the search warrant initially, or whether the officers were acting in good faith. This argument also goes beyond the scope of rule 38.3, and we reject it. Appellant's trial counsel presented his case with skill and thoroughness, and showed himself to be mindful of the applicable principles of law. His theory of the implausibility of the State's evidence at the motion to suppress evidence was well developed, and was sound trial strategy. Trial counsel is

---

**3.** Appellant argues that he did *not* concede the validity of the warrant for the shotgun. We disagree. Appellant stated in his appellant's brief that police officers *"obtain[ed] a search warrant only for the shotgun,* attempt[ed] to trick the Appellant into believing they had a warrant for drugs, and hop[ed] that the drugs would turn up in the search." (Emphasis added). The trial court apparently found all of this to be true, and we have held, based on the pretext doctrine and the specific facts of the case, that it was permissible. Appellant argues in both his original and reply briefs that even with conflicting evidence, the incredibility and implausibility of the State's evidence gave the trial court no choice but to conclude that the shotgun was discovered before the search of appellant's home. We have addressed and rejected appellant's argument and have found the officers' action permissible under a pretext warrant.

not responsible for our extension of the law of pretext arrest and search to cover the fact situation presented.

We overrule the additional points of error raised in appellant's reply brief.

The trial court's judgment is affirmed.