COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



| | § | |
|---|---|---|
| SEAN MICHAEL KELLY, | § | No. 08-12-00291-CR |
| Appellant, | § | Appeal from |
| v. | § | 415th District Court |
| THE STATE OF TEXAS, | § | of Parker County, Texas |
| Appellee. | § | (TC # 15133) |
| | § | |

## **O P I N I O N**

In a single point of error, Sean Michael Kelly, challenges the trial court's decision to revoke his probation for the offense of criminal solicitation with intent to commit sexual assault. For the reasons that follow, we affirm.

### **FACTUAL SUMMARY**

Kelly pled guilty in 2005 to the offense of criminal solicitation of a minor with intent to commit sexual assault and received a probated sentence of ten years' incarceration and a $5,000 fine. One of the conditions of Kelly's probation was that he attend, participate in, and successfully complete a sex offender counseling program. The State filed a motion to revoke Kelly's probation in June 2012, alleging that he had "failed to successfully complete [the] sex offender counseling program." The trial court conducted a hearing on the motion on September 5, 2012.

The State's first witness was Kelly's probation officer, Steven Dover, who testified that he sought to revoke Kelly's probation because Kelly had been discharged from the court-ordered counseling program without successfully completing it. The decision to expel Kelly was made by Kelly's third-party treatment provider, Ezio Leite. The State then called Leite, who testified that "there was a combination of factors that led [him] to discharge [Kelly]" from the program. Leite did not detail what these factors were, although a letter he had previously sent to Dover explained that Kelly was expelled because he had not "cleared" four polygraph examinations he was required to undergo as part of treatment. Failing the polygraph exams represented a change in Kelly's overall pattern of behavior that Leite could neither understand nor explain, despite having discussed it with Kelly in individual therapy sessions. Leite further indicated that Kelly had a history of being secretive, and that this, coupled with Kelly's "continuous inability to demonstrate truthfulness on the aforementioned [polygraph] tests indicates that he is not in compliance with [the terms of his] treatment . . . ." Defense counsel objected numerous times during the hearing that the results of the polygraph examinations were inadmissible and that the trial court could not revoke Kelly's probation for the failed polygraphs alone.[1]

The trial court bifurcated the revocation hearing into "guilt" and "punishment" stages. At the conclusion of the guilt phase, the trial court found the State's sole revocation allegation true. The State then re-called Leite during the punishment phase, and inquired whether there were any reasons he doubted Kelly's truthfulness other than the failed polygraph examinations. Leite then detailed the combination of factors leading to Kelly's expulsion from treatment that he had alluded to in his earlier testimony. During the course of his treatment, Kelly had been involved

---

[1] Kelly's counsel's objected to both the contents of Leite's letter and his testimony on the basis that the polygraph evidence was unreliable and inadmissible. Although counsel requested a hearing on the reliability of Leite's opinions pursuant to Rule of Evidence 705(c), the trial court denied the request.

in a secret sexual affair with a woman while he was engaged to marry another woman. Leite became aware of sexual actions Kelly took towards his wife without her consent while she was sleeping. Leite also administered a penile plethysmograph test to determine whether Kelly had made any progress towards discriminating between women and girls in terms of sexual arousal. This testing revealed that Kelly continued to have an equal or similar sexual response to both. )Based on all of these things, Leite concluded, without objection, that Kelly was a "risk to society in terms of sexually reoffending." At the conclusion of this evidence, the trial court revoked Kelly's probation and sentenced him to a ten years' incarceration.

## STANDARD OF REVIEW

In his single point of error, Kelly contends that the trial court abused its discretion by revoking his probation based upon the inadmissible results of his failed polygraph examinations. A trial court has discretion to revoke a criminal defendant's probation when a preponderance of the evidence supports the State's allegation that the defendant violated a condition of probation. *Rickels v. State*, 202 S.W.3d 759, 763-64 (Tex.Crim.App. 2006), *quoting Scamardo v. State*, 517 S.W.2d 293, 298 (Tex.Crim.App. 1974). While defendants are not entitled to probation as a matter of right, once a defendant is placed on probation in lieu of other punishment, this conditional liberty "should not be arbitrarily withdrawn by the court . . . ." *DeGay v. State*, 741 S.W.2d 445, 449 (Tex.Crim.App. 1987). Accordingly, courts of appeal review orders revoking community supervision under the abuse of discretion standard. *Leonard v. State*, 385 S.W.3d 570, 576 (Tex.Crim.App. 2012). In a case such as this, however, where the decision to revoke arises from the discretion of a third-party therapist to expel a probationer from a court-ordered counseling program, appellate courts "must also examine the third party's use of its discretion to ensure that it was used on a basis that was rational and connected to the purposes of community

supervision." *Id.* at 577, *citing* TEX.CODE CRIM.PROC.ANN. art. 42.12, § 11(a). This requisite applies here because Kelly's probation was conditioned upon his successful completion of the therapy program, as determined by his treatment provider.

## ANALYSIS

Kelly correctly argues that the results of polygraph testing cannot constitute the sole basis of a probation revocation. In *Leonard v. State*, the Court of Criminal Appeals reaffirmed its earlier pronouncements regarding the unreliability and inadmissibility of polygraph testing and held that a trial court abuses its discretion by admitting expert testimony that relies exclusively on polygraph results. *Leonard*, 385 S.W.3d at 582. Like the instant case, *Leonard* was also a sex offender probation revocation case in which the decision to expel the Leonard from court-ordered treatment was made by a third-party therapist. *Id.* at 577. Unlike this case, however, the only reason advanced by the therapist in support of his decision to expel Leonard from treatment was Leonard's failure of polygraph testing.[2] *Id.* at 583.

Although the results of Kelly's polygraph testing were advanced as one reason for his expulsion from the counseling program, other reasons were also given. Regarding Kelly's undisclosed unfaithfulness to his fiancée, Leite explained that one of the components of Kelly's problem is his secretiveness about his sexual behavior. Leite encouraged Kelly to be truthful with his fiancée about the affair, but Kelly refused to do. The import of Kelly's nonconsensual sexual conduct towards his sleeping wife is obvious, as is his failure to show improvement in plethysmographic testing. Taken together, these matters demonstrate that Kelly did not put into

---

[2] The *Leonard* court expressly did not consider whether requiring a defendant to submit to polygraph testing in the first instance is a reasonable condition of community supervision. *Leonard*, 385 S.W.3d at 582. Nonetheless, the Council on Sex Offender Treatment, which was created by the Texas Legislature for the express purpose of "develop[ing] treatment strategies for sex offenders" and "set[ting] standards for treatment of sex offenders," has affirmatively endorsed polygraph testing as an approved treatment standard. TEX.OCC.CODE ANN. § 110.151 (West 2012); 22 TEX.ADMIN.CODE ANN. § 810.64(d)(18). As such, polygraph testing may be imposed as a sex offender probation condition pursuant to TEX.CODE CRIM.PROC.ANN. art. 42.12, § 11(i)(West Supp. 2013).

practice the skills taught in therapy. Successful completion of a court-ordered sex offender treatment program necessarily requires more than mere participation in the program; it requires improvement, or--at the very least--demonstration of an attempt to improve through implementation of the skills imparted in therapy. *See, e.g., Figgins v. State*, 528 S.W.2d 261, 262-63 (Tex.Crim.App. 1975); *Ott v. State*, 690 S.W.2d 337, 339 (Tex.App.--Eastland 1985, pet. ref'd). We cannot conclude based on this record that no rational basis related to the goals of probation supported Ezio Leite's decision to expel Kelly from treatment.

Regarding the trial court's decision to bifurcate the proceeding, Kelly argues for the first time in his reply brief that the court was limited to considering the evidence advanced during the first stage of the hearing. More precisely, Kelly argues that the hearing should not have been bifurcated in the first instance, and thus that the evidence introduced during the second stage should not have been admitted or considered. Generally, issues may not be raised for the first time in a reply brief. *See* TEX.R.APP.P. 38.3; *Barrios v. State*, 27 S.W.3d 313, 322 (Tex.App.--Houston [1st Dist.] 2000, pet. ref'd). Nonetheless, analysis of this issue does not alter the outcome.

As Kelly correctly asserts, guilt/punishment bifurcation is statutorily required only in cases tried before a jury on a plea of not guilty. *See* TEX.CODE CRIM.PROC.ANN. art. 37.07, § 2 (West Supp. 2013); and *Barfield v. State*, 63 S.W.3d 446, 449-50 (Tex.Crim.App. 2001). The purpose of bifurcation is to protect a defendant from a jury's consideration of punishment evidence while the question of guilt is still open. *Id.*; *see also Karl v. State*, No. 02-08-00243-CR, 2008 WL 5194300, at *1 (Tex.App.--Fort Worth Dec.11, 2008, no pet.)(mem. op., not designated for publication), *citing Davis v. State*, 968 S.W.2d 368, 372 (Tex.Crim.App. 1998). The Court of Criminal Appeals has also recognized the necessity of bifurcating a hearing to

revoke community supervision granted in connection with a deferred adjudication of guilt pursuant to TEX.CODE CRIM.PROC.ANN. art. 42.12, § 5. *See Issa v. State*, 826 S.W.2d 159, 161 (Tex.Crim.App. 1992). We are aware of no authority authorizing bifurcation of a revocation hearing where guilt of the underlying offense has been previously adjudicated. The Court of Criminal Appeals has mandated the consideration of evidence introduced during the punishment stage of an irregularly bifurcated non-jury trial in determining the evidentiary sufficiency of guilt. *Barfield v. State*, 63 S.W.3d at 450-51 (holding that "court of appeals erred to limit its consideration of the evidence to that which was introduced at the 'guilt' stage of [a] non-jury trial"). We can see no meaningful distinction between a non-jury trial and a revocation hearing for purposes of this requisite.

Criminal bench trials and probation revocation hearings are both unitary proceedings. The decision of a trial court in a unitary proceeding "is not fixed until it renders judgment on guilt and punishment after all the evidence and arguments have been heard." *Id.* at 451, *citing Jones v. State*, 797 S.W.2d 33, 34 (Tex.Crim.App. 1990). There was thus no significant difference between the bifurcated stages of Kelly's hearing, and we are bound to consider the evidence presented during both stages in determining whether the revocation of Kelly's probation was improper. *Id.* For the same reason, we find no merit in Kelly's assertion that he was harmed by bifurcation. For all of these reasons, we overrule the sole point of error and affirm the judgment of the trial court below.

August 6, 2014

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Rodriguez, JJ.

(Do Not Publish)