COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS



§

CAIN BRUTON,                                                      No. 08-11-00316-CR

§

        Appellant,                                        Appeal from

§

v.                                                                      211th District Court

§

THE STATE OF TEXAS,                                     of Denton County, Texas

§

        Appellee.                                          (TC # F-2007-0697-C)

§

## O P I N I O N

Cain Bruton is appealing his convictions of aggravated sexual assault of a child (Count I) and indecency with a child with by sexual contact (Count II). A jury found Appellant guilty of each count and assessed his punishment at life imprisonment on Count I and imprisonment for twenty years on Count II. Having found error in the punishment phase of trial, we reverse the sentences imposed on Counts I and II and remand for a new punishment hearing.

## FACTUAL SUMMARY

The complainant, A.D., and her two siblings lived with their mother after their parents divorced. The family lived in a small apartment in Gorman, Texas, and struggled due to limited financial resources. A.D.'s mother began dating Appellant and the family moved into Appellant's home in Carrollton when A.D. was eight years of age. A.D. described the home as big with a bedroom for each child. Appellant provided well for the family as each child had a

cellphone, they always had food to eat, and money no longer seemed to be an issue. The children also enjoyed the swimming pool and hot tub.

A.D.'s mother was an alcoholic who frequently went out with her friends at night while Appellant stayed home with the children. She often did not come home until early in the morning or not at all. A.D., who was eighteen years of age at the time of trial, testified that Appellant touched her inappropriately once or twice a week when she was between the ages of eight and thirteen by using his fingers to touch her vagina[1] either on top of her clothing or beneath the clothing. She provided details about some of these events for the jury.

On one occasion, Appellant entered the children's bedroom in Gorman while A.D. was getting dressed for school. Appellant tickled A.D.'s sides but he reached down and touched her between her legs on top of her underwear. He fondled her on another day while she was riding "piggyback" on his back. A.D. was wearing shorts and Appellant slipped his thumbs inside of her shorts, but on top of her underwear, and rubbed back and forth. She did not believe it was an accidental touching because she asked Appellant to stop, and he said, "Oh, you know you like that." Both of these events occurred when A.D. was seven or eight years of age but she could not remember which occurred first because her memories were jumbled and "smushed." Appellant also fondled A.D. while they were in the swimming pool. He slipped his fingers beneath her one-piece bathing suit and touched her vagina with his fingers. His fingers stayed on the outside of her vagina but his fingertips might have penetrated her. A.D. got up and went to the other side of the pool to get away from Appellant.

---

[1] A.D. used the word "vagina" throughout her testimony to describe what part of her body Appellant touched.

A.D. also recalled that Appellant engaged in a different type of contact shortly after her family moved into Appellant's home in Carrollton. She awoke one night and discovered that Appellant had removed her shorts and underwear and was licking her vagina. He was moving his tongue back and forth and he was also using his lips to touch her. A.D. squeezed her legs together and asked Appellant to stop but he did not. A.D. closed her eyes and hoped she would go back to sleep. When she woke up the next morning, she was wearing her shorts but not her underwear.

A.D. wrote two notes to her mother telling her that Appellant was touching her inappropriately but her mother never did anything. When A.D. was nine years of age, the Denton County Children's Advocacy Center interviewed her and she denied that anyone was touching her or doing anything bad to her. A.D. explained that she denied the abuse because her mother had talked to her prior to the interview, and after that conversation, A.D. did not believe she could tell the truth. When A.D. was thirteen years old, she told her mother that she wanted to move to her father's house. A.D. told her brother and sister about the abuse, but they all felt like they could not tell anyone. All three of them wanted to move in with their father. Their mother told them to wait one more year so they continued living with Appellant. Shortly before A.D. turned fourteen, she and her siblings moved to their father's home. On the day before A.D.'s birthday, her father's fiancé, M.S., asked A.D. whether Appellant had been touching her. A.D. told her that he had, and they had a conversation about some of the instances of abuse. They made a police report and A.D. was interviewed at a child advocacy center. Even though she was embarrassed and scared, A.D. told the interviewer about the abuse.

M.S. testified about A.D.'s outcry to her. Another family member told M.S. something that made her suspect that Appellant had been molesting A.D., so she took her aside and told A.D. that she knew what was going on. A.D. immediately began crying and told M.S. that Appellant had been molesting her since they had moved into his house. A.D. said that Appellant had gone into her bedroom at night and had licked her vagina and breasts, and he had put his finger inside of her while they were in the swimming pool. M.S. told A.D.'s father about the conversation and they made a report to the police department.

Angela Fritts, a child abuse investigator for the Carrolton Police Department, began investigating the case in August of 2006. She was unable to make contact with Appellant because his home in Carrollton was vacant. She subsequently learned that he had left the country and had returned to England.[2] A grand jury returned a three-count indictment against Appellant on March 29, 2007. Following extradition, Appellant was returned to Denton County and booked into jail on May 5, 2010. Prior to trial, the State abandoned Count II and the trial court renumbered Count III as Count II. The jury found Appellant guilty of aggravated sexual assault of a child as alleged in Count I and indecency with a child with by contact as alleged in Count II. The jury assessed punishment at life imprisonment on Count I and imprisonment for twenty years on Count II.

## SUFFICIENCY OF THE EVIDENCE

In his first issue, Appellant challenges the legal and factual sufficiency of the evidence supporting his convictions of aggravated sexual assault and indecency with a child. He contends that the complainant was not credible and the State failed to offer any physical evidence

---

[2] Appellant is an British citizen.

connecting Appellant to any offenses. He reasons that the evidence is insufficient to prove either offense.

*Standard of Review*

In *Brooks v. State*, the Court of Criminal Appeals abandoned factual sufficiency review in those cases where the burden of proof is beyond a reasonable doubt. *Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex.Crim.App. 2010)(finding no meaningful distinction between the legal and factual sufficiency standards and no justification for retaining both standards, therefore overruling the factual sufficiency review adopted in *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App. 1996)). The legal sufficiency standard articulated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), is the only standard a reviewing court applies in determining whether the evidence is sufficient to support a conviction. *Brooks*, 323 S.W.3d at 894-95. Appellant asserts that the majority opinion is *Brooks* is incorrect and we should review the evidence for factual insufficiency. As an intermediate appellate court, we are required to follow the precedent of the Court of Criminal Appeals pertaining to criminal law matters. *See Wiley v. State*, 112 S.W.3d 173, 175 (Tex.App.--Fort Worth 2003, pet. ref'd); *Flores v. State*, 883 S.W.2d 383, 385 (Tex.App.--Amarillo 1994, pet. ref'd). Once the Court of Criminal Appeals has ruled on an issue, we are not at liberty to impose a different declaration of the law. *Abdnor v. Ovard*, 653 S.W.2d 793, 794 (Tex.Crim.App. 1983). Accordingly, we will review the evidence under the *Jackson v. Virginia* legal sufficiency standard and determine whether the evidence is sufficient to support the challenged elements beyond a reasonable doubt. *See Brooks*, 323 S.W.3d 894-95, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789.

Under that standard, a reviewing court views all the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Wise v. State*, 364 S.W.3d 900, 903 (Tex.Crim.App. 2012); *Brooks*, 323 S.W.3d at 894-95, *citing Jackson*, 443 U.S. at 319, 99 S.Ct. at 2789. As the trier of fact, the jury is the sole judge as to the weight and credibility of witness testimony, and therefore, on appeal we must give deference to the jury's determinations. *Brooks*, 323 S.W.3d at 894-95. If the record contains conflicting inferences, we must presume the jury resolved such facts in favor of the verdict and defer to that resolution. *Id*. On appeal, we serve only to ensure the jury reached a rational verdict, and we may not reevaluate the weight and credibility of the evidence produced at trial and in so doing substitute our judgment for that of the fact finder. *King v. State*, 29 S.W.3d 556, 562 (Tex.Crim.App. 2000). The sufficiency standard is the same for both direct and circumstantial evidence. *Wise*, 364 S.W.3d at 903.

*New Arguments Raised in Reply Brief*

In his reply brief, Appellant argues for the first time that the evidence is legally insufficient to prove aggravated sexual assault because the State failed to prove that he contacted A.D.'s sexual organ with his mouth because she testified that he licked her "vagina" and did not use the statutory term "sexual organ." Similarly, he challenges the legal sufficiency supporting the indecency with a child conviction because A.D. testified that Appellant touched her "vagina" with his fingers but the State did not prove sexual contact with A.D.'s genitals. Appellant also argues that the State failed to prove that he acted with the specific intent to arouse or gratify the sexual desires of any person.

- 6 -

A reply brief is only allowed to address matters raised in the appellee's brief.  *See* TEX.R.APP.P. 38.3; *Barrios v. State*, 27 S.W.3d 313, 322 (Tex.App.--Houston [1st Dist.] 2000, pet. ref'd).  A new issue may not be raised for the first time in a reply brief.  *See Barrios*, 27 S.W.3d at 322.  While Appellant challenged the sufficiency of the evidence supporting his convictions, he did not raise any of these specific arguments in his original brief and the State did not raise the issues in its brief.  It is unfair to the State for Appellant to raise new arguments in the reply brief because the State is not afforded an opportunity to brief these issues.  Further, it places the Court in the position of having to anticipate what arguments the State might have made in response.  By waiting until his reply brief to raise these arguments, Appellant has risked that the Court will refuse to review them.  Despite our misgivings, we will review the legal sufficiency arguments raised in the reply brief in the interest of justice.

*Aggravated Sexual Assault*

A person commits aggravated sexual assault if he intentionally or knowingly causes the sexual organ of a child younger than fourteen years of age to contact the mouth of the actor or another person.  TEX.PENAL CODE ANN. § 22.021(a)(1)(B)(iii), (2)(B)(West Supp. 2012).  Count I of the indictment tracked the statutory language.

Appellant argues that A.D.'s testimony was not credible because she admitted that her memories were "jumbled," she previously denied the existence of any abuse, and she made a prior inconsistent statement regarding whether penetration had occurred.  Appellant also points to the absence of any physical evidence such as DNA.  The testimony of a child sexual abuse victim alone is sufficient to support a conviction for aggravated sexual assault.  *See* TEX.CODE

- 7 -

CRIM.PROC.ANN. art. 38.07 (West Supp. 2012); *Connell v. State*, 233 S.W.3d 460, 466 (Tex.App.--Fort Worth 2007, no pet.); *Emenhiser v. State*, 196 S.W.3d 915, 930-31 (Tex.App.--Fort Worth 2006, pet. ref'd). With regard to A.D.'s memory, she testified that her memory was "jumbled" as to whether one event occurred before another one, but the record reflects that A.D. clearly recalled the specifics of the sexual abuse. A.D. admitted she had previously stated that Appellant penetrated her with his finger, but at trial she testified that only the tip of his fingers penetrated her. She also explained why she had denied any abuse when she was interviewed at the age of nine. The jury heard all of this evidence and it was their task to determine A.D.'s credibility. *See Connell*, 233 S.W.3d at 466. We are required to defer to that assessment. *Id.*

We turn now to the arguments raised in the reply brief as they apply to the aggravated sexual assault conviction. Appellant maintains that the evidence is insufficient to prove that Appellant contacted A.D.'s sexual organ with his mouth as alleged in Count I of the indictment because A.D. used the word "vagina" to describe the part of her body Appellant licked with his mouth. Since the vagina is an internal part of the female sexual organ, and A.D. did not testify that Appellant penetrated her sexual organ with his mouth, Appellant reasons that the evidence is insufficient to prove Appellant contacted her sexual organ. In effect, he argues that A.D.'s testimony is not credible as a result of what he views as a conflict.

"Sexual organ" is not defined by statute and the jury charge did not include a definition. Thus, the jury was free to give these words their common and ordinary meaning. *See Vernon v. State*, 841 S.W.2d 407, 409 (Tex.Crim.App.1992). When determining the sufficiency of evidence to support a jury verdict, reviewing courts must not employ definitions of relevant

statutory words which are different or more restrictive than the jurors themselves were legally entitled to use. *Id*. Further, it was the jury's task to resolve conflicts in the evidence. We have reviewed all of A.D.'s testimony and she consistently used the word vagina to describe the portion of her body Appellant touched with his fingers both on top of and beneath her underwear. In some portions of her testimony, she used the phrase "between my legs" to explain where Appellant touched her. A.D. described how Appellant touched her vagina or between her legs and she explained that his fingers penetrated her body on one occasion. When A.D. testified about the conduct at issue in Count I, the contact of Appellant's mouth with her sexual organ, she also used the word vagina. The jury could have reasonably concluded that A.D.'s use of the word vagina referred to the more general term "sexual organ." When taken in the light most favorable to the verdict, the evidence is sufficient to support the jury's finding that Appellant contacted A.D.'s sexual organ with his mouth as alleged in Count I of the indictment.

*Indecency with a Child*

A person commits the offense of indecency with a child if, with a child younger than seventeen years and not the person's spouse, the person engages in sexual contact with the child. TEX.PENAL CODE ANN. § 21.11(a)(1) (West 2011). "Sexual contact" means any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child, if committed with the intent to arouse or gratify the sexual desire of any person. TEX.PENAL CODE ANN. § 21.11(c)(1)(West 2011). Count II of the indictment alleged that Appellant, with intent to arouse or gratify his own sexual desire, engaged in sexual contact with A.D., a child younger than seventeen years of age and not his spouse, by touching her genitals.

As was the case with the sufficiency challenge directed at his conviction under Count I, Appellant contends that the evidence is insufficient to support his conviction of indecency with a child because A.D. is not credible and there is no physical evidence proving the offense or connecting him to it. We reject this contention for the same reasons already stated in our consideration of the sufficiency challenge directed at Count 1.

Appellant argues in his reply brief that the State failed to prove that he engaged in sexual contact with A.D. because she used the word vagina and did not testify that he touched her genitals. A.D. testified that Appellant touched her between her legs or touched her vagina with his fingers, once or twice a week for approximately five years. Appellant sometimes touched this area of her body through the clothing but on many occasions he put his fingers beneath her shorts and underwear in order to touch her. The term genitals is not defined by the Penal Code and the trial court did not include a definition in the court's charge. Accordingly, the jury could give this word its common and ordinary meaning. *See Vernon*, 841 S.W.2d at 409. The jury could have reasonably found beyond a reasonable doubt that A.D.'s testimony described a touching of her genitals.

Appellant also contends that the State failed to prove that he touched her genitals with the intent to arouse or gratify his sexual desire. In a prosecution for indecency with a child, the defendant's specific intent to arouse or gratify the sexual desire of a person may be inferred from the conduct or remarks of the accused, or from the surrounding circumstances. *McKenzie v. State*, 617 S.W.2d 211, 216 (Tex.Crim.App. 1981). The State is not required to introduce evidence that the defendant uttered any words expressing that intent or visible evidence of sexual

- 10 -

arousal. *Connell*, 233 S.W.3d at 471; *Scott v. State*, 202 S.W.3d 405, 408 (Tex.App.--Texarkana 2006, pet. ref'd). Further, the intent to arouse or gratify may be inferred from the defendant's conduct alone. *McKenzie*, 617 S.W.2d at 216.

A.D. testified she asked Appellant to stop touching her on one occasion, but he refused and told her, "Oh, you know you like it." From this statement, the jury could have inferred that Appellant engaged in the conduct with the specific intent to arouse or gratify sexual desire. Further, the record shows that Appellant repeatedly touched A.D.'s genitals over a period of several years. From this evidence, the jury could infer that he touched her with the specific intent to arouse or gratify his sexual desire. We conclude that the evidence is legally sufficient to prove beyond a reasonable doubt that Appellant acted with the requisite specific intent. *See Abbott v. State*, 196 S.W.3d 334, 341 (Tex.App.--Waco 2006, pet. ref'd)(jury could infer intent to arouse or gratify sexual desire from defendant's act of touching child's genitals). For all of these reasons, we conclude that the evidence is legally sufficient to support Appellant's convictions of aggravated sexual assault and indecency with a child by sexual contact. Issue One is overruled.

### ADMISSION OF FOREIGN CONVICTIONS

In Issue Two, Appellant argues that the trial court abused its discretion by admitting unauthenticated foreign judgments during the punishment phase for the purpose of proving that Appellant had twelve prior convictions in the United Kingdom for indecent assault on a female. The State utilized State's Exhibits 10 through 15 and the testimony of Patrick LeMaire, a forensic investigator employed by the Denton County Sheriff's Office, to prove Appellant had

these twelve prior convictions for indecent assault on a female from the United Kingdom. State's Exhibit 10 is an inked print card which LeMaire obtained from Appellant prior to the punishment phase. State's Exhibit 11 is a criminal history printout from Interpol for Peter Kane Bruton. The first page of State's Exhibit 11 indicates that it is a printout of a PNC record for Peter Kane Bruton who is assigned a unique PNC identification number.[3] Consistent with a statement on the cover page of the printout regarding the number of pages, the report consists of ten printed pages. The criminal history in State's Exhibit 11 shows that Peter Kane Bruton has twelve convictions for indecent assault on a female. State's Exhibit 11 also includes a set of fingerprints for Peter Bruton and the print card bears the same unique ID number as the printout. Additionally, an Interpol DNA profile for Peter Bruton is included in State's Exhibit 11. LeMaire compared State's Exhibit 10 with the print card admitted as part of State's Exhibit 11 and concluded that the prints in both exhibits were made by the same person, Appellant. The trial court admitted State's Exhibit 11 for purposes of the record only during a hearing outside of the jury's presence, but the court later admitted into evidence State's Exhibit 14 which is a redacted version of State's Exhibit 11.

State's Exhibit 12 is a packet of documents from the Norfolk Constabulary. It consists of a conviction history for Peter Kane Bruton and a letter from John McGuire, a data protection disclosure unit officer with the Norfolk Constabulary, stating that he could not provide "Certified Copies" as requested because the Norfolk Constabulary did not have an official stamp. McGuire stated he had instead stamped the pages with the "Professional Standards" stamp from his

---

[3] We assume PNC refers to the Police National Computer which is a database utilized by police forces and law enforcement agencies in the United Kingdom. We have purposely omitted the unique ID number from the opinion.

department.  State's Exhibit 12 bears the same unique ID number as State's Exhibit 11.  The trial court admitted State's Exhibit 12 for purposes of the record only during a hearing outside of the jury's presence, but a redacted version of the exhibit was admitted as State's Exhibit 15.

State's Exhibit 13 is a packet of documents consisting of a letter from a "caseworker" of the Crown Court at Norwich and what the caseworker refers to as "Certificates of Conviction." There are three certificates of conviction related to case numbers T20070017, T20070030, and T20070072 and each certificate is signed by the "Officer of the Crown Court."  In the certificate related to case number T20070017, the officer of the Crown Court certifies that Peter Bruton was "upon his own confession convicted upon indictment of Indecent assault on female x 6" and sentenced to eighteen months imprisonment on each count.  The certificate related to case number T20070030 reflects that Peter Bruton was convicted of three counts of indecent assault on a female and sentenced to imprisonment for eighteen months on each count.  Finally, the certificate related to case number T20070072 certifies that Peter Bruton was convicted of three counts of indecent assault on a female and sentenced to serve twelve months in prison.  None of the other exhibits bears these causes numbers and State's Exhibit 13 does not bear the unique ID number present on State's Exhibits 11, 12, 14, or 15.

*Self-Authentication*

Appellant objected to State's Exhibits 11 through 15 on the ground that they were inadmissible hearsay and they were not properly authenticated.  On appeal, Appellant restricts his argument to the lack of authentication ground.

To establish that a defendant has been convicted of a prior offense, the State must prove

beyond a reasonable doubt that (1) a prior conviction exists, and (2) the defendant is linked to that conviction. *Flowers v. State*, 220 S.W.3d 919, 921 (Tex.Crim.App. 207). No specific document or mode of proof is required to prove these two elements. *Id.* Both elements are often proved through introduction of a certified copy of a final judgment and sentence but this is not the only mode of proof. *Id.* The State may also prove these elements through (1) the defendant's admission or stipulation, (2) testimony by a person who was present when the person was convicted of the specified crime and can identify the defendant as that person, or (3) documentary proof (such as a judgment) that contains sufficient information to establish both the existence of a prior conviction and the defendant's identity as the person convicted. *Id.* at 921-22.

Under Rule 104(a) of the Texas Rules of Evidence, the preliminary question whether or not to admit evidence is determined by the trial court. TEX.R.EVID. 104(a); *Tienda v. State*, 358 S.W.3d 633, 637-38 (Tex.Crim.App. 2012). Evidence has no relevance if it is not authentically what its proponent claims it to be. *Tienda*, 358 S.W.3d at 638. A document may be properly authenticated under either Texas Rule of Evidence 901 or 902, and it need not be authenticated under both. *Reed v. State*, 811 S.W.2d 582, 586 (Tex.Crim.App. 1991).

Rule 901(a) of the Rules of Evidence defines authentication as a "condition precedent" to admissibility of evidence that requires the proponent to make a threshold showing that would be "sufficient to support a finding that the matter in question is what its proponent claims." *Tienda*, 358 S.W.3d at 638, *quoting* TEX.R.EVID. 901(a). Whether the proponent has crossed this threshold as required by Rule 901 is one of the preliminary questions of admissibility

- 14 -

contemplated by Rule 104(a). *Tienda*, 358 S.W.3d at 638. Rule 902 specifies the requirements for self-authenticating documents and it provides that extrinsic evidence of authenticity as a condition precedent to admissibility is not required with respect to certain types of documents. TEX.R.EVID. 902.

Proffered evidence should be admitted upon a finding of authenticity or subject to the introduction of evidence sufficient to support such a finding. *Tienda*, 358 S.W.3d at 638. The ultimate question whether an item of evidence is what its proponent claims then becomes a question for the fact finder. *Id.* In this case, the jury was the fact finder during the punishment phase. In *Tienda*, the Court of Criminal Appeals noted that the trial court itself need not be persuaded that the proffered evidence is authentic. *Id.* The preliminary question for the trial court to decide is simply whether the proponent of the evidence has supplied facts that are sufficient to support a reasonable jury determination that the evidence he has proffered is authentic. *Id.*

We apply the abuse of discretion standard of review to a trial court's ruling on this preliminary question of admissibility. *Id.* A reviewing court will not interfere with the trial court's ruling that a jury could reasonably find proffered evidence authentic if it is at least "within the zone of reasonable disagreement." *Id.*

*Rule 902(3)*

The State offered the challenged evidence pursuant to Rules 902(3) and 902(4) of the Texas Rules of Evidence. Rule 902(3) provides as follows:

> **(3) Foreign Public Documents.** A document purporting to be executed or attested in an official capacity by a person, authorized by the laws of a foreign

country to make the execution or attestation, and accompanied by a final certification as to the genuineness of the signature and official position (A) of the executing or attesting person, or (B) of any foreign official whose certificate of genuineness of signature and official position relates to the execution or attestation or is in a chain of certificates of genuineness of signature and official position relating to the execution or attestation. A final certification may be made by a secretary of embassy or legation, consul general, consul, vice consul, or consular agent of the United States, or a diplomatic or consular official of the foreign country assigned or accredited to the United States. If reasonable opportunity has been given to all parties to investigate the authenticity and accuracy of official documents, the court may, for good cause shown, order that they be treated as presumptively authentic without final certification or permit them to be evidenced by an attested summary with or without final certification. The final certification shall be dispensed with whenever both the United States and the foreign country in which the official record is located are parties to a treaty or convention that abolishes or displaces such requirement, in which case the record and the attestation shall be certified by the means provided in the treaty or convention.

State's Exhibits 11 and 14 are barebones computer printouts. They are not self-authenticating under Rule 902(3) because they are not executed or attested in an official capacity by anyone and there is no final certification.

State's Exhibits 12 and 15 have a cover letter signed by John McGuire who has the title of "Data Protection Disclosure Unit Officer" but the exhibits lack the final certification required by Rule 902(3). The State did not offer any evidence supporting a finding of good cause to dispense with the certification requirement. Likewise, there is no evidence that there is a treaty or convention between the United States and the United Kingdom that abolishes the certification requirement or provides for a different certification.

State's Exhibit 13 is executed by an "Officer of the Crown Court" but the exhibit lacks a final certification. As was the case with State's Exhibits 12 and 15, the State did not establish good cause to dispense with the final certification requirement and there is no evidence that there

is a treaty or convention.  There is no basis on which the trial court or the jury could reasonably conclude that State's Exhibits 11 through 15 are authentic foreign public documents. Accordingly, we find that the trial court abused its discretion by admitting the exhibits under Rule 902(3).

<em>Rule 902(4)</em>

Rule 902(4) provides as follows:

> **(4)  Certified Copies of Public Records**.  A copy of an official record or report or entry therein, or of a document authorized by law to be recorded or filed and actually recorded or filed in a public office, including data compilations in any form certified as correct by the custodian or other person authorized to make the certification, by certificate complying with paragraph (1), (2) or (3) of this rule or complying with any statute or other rule prescribed pursuant to statutory authority.

State's Exhibits 11 and 14 do not contain any type of certification.  Accordingly, they do not meet Rule 902(4)'s requirement that they must be certified as correct by the custodian or any person authorized to make the certification.  Even though State's Exhibits 12 and 15 have a cover letter signed by the "Data Protection Disclosure Unit Officer," the officer does not certify any of the facts required by Rule 902(4).  State's Exhibit 13 is executed by an "Officer of the Crown Court" but the exhibit lacks a certificate in the form required by Rule 902.  There is no basis on which the trial court or the jury could reasonably conclude that State's Exhibits 11 through 15 are authentic certified copies of public records.  The trial court abused its discretion by finding that the exhibits are self-authenticating under Rule 902(4).

Even if State's Exhibit 13 is arguably self-authenticating under Rule 902(4), it is nevertheless inadmissible because the State cannot link Appellant to the convictions in that

exhibit because State's Exhibits 11 and 14 are not self-authenticating. The latter two exhibits are the linchpins in the analysis because they included the fingerprint card used by the State to prove through the fingerprint examiner, LeMaire, that Appellant is the same person previously convicted twelve times of indecent assault as shown in State's Exhibits 12, 13, and 15. If State's Exhibits 11 and 14 are inadmissible because they are not properly authenticated, then the State cannot link Appellant to the twelve prior convictions. The trial court abused its discretion by admitting evidence of these prior convictions.

*Harm Analysis*

The erroneous admission of evidence of prior convictions is non-constitutional error. Rule 44.2(b) of the Texas Rules of Appellate Procedure provides that any error, other than constitutional error, that does not affect substantial rights must be disregarded. TEX.R.APP.P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence on the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997). Substantial rights are not affected by the erroneous admission of evidence if, after examining the record as a whole, we have fair assurance that the error did not influence the jury, or had but a slight effect. *Motilla v. State*, 78 S.W.3d 352, 355 (Tex.Crim.App. 2002). In assessing the likelihood that the jury's decision was adversely affected by the error, the Court of Criminal Appeals has instructed that we consider everything in the record, including any testimony or physical evidence admitted for the jury's consideration, the nature of the evidence supporting the verdict, the character of the alleged error and how it might be considered in connection with other evidence in the case. *Id*. The reviewing court may also consider the jury instructions, the

State's theory and any defensive theories, closing arguments, and even *voir dire*, if applicable. *Id*. at 355-56.

The admissible evidence at trial established that Appellant sexually assaulted A.D. for several years and he molested other children during this same time period. The erroneously admitted evidence not only established the twelve prior convictions, it included details about the specific conduct involved in each case and those descriptions are consistent with the conduct proven in Counts I and II. During final argument, the prosecutor told the jurors that they should impose the maximum punishment in each case and he utilized the twelve prior foreign convictions in its final argument to support that argument:

> You need to consider the crimes, and how repetitive those crimes were in assessing punishment. And then you need to look at, well, what type of individual are you sentencing? You need to look at the Defendant. And in looking at the Defendant, you're going to have to look at his conduct and his conduct will show you what type of person he really is. This went on for a period of five years, when she was 8 till almost 14. And that's not including all the stuff that happened in the UK, which you have the document that shows that he was convicted of those crimes in the UK. 12 separate counts, 12, in addition to the five-year period here. This is what he does. If he's not locked up, this is what he does. It's his hobby. Scorpions sting, he molests children. If he's not locked up, he has proven that he is going to molest children.

> .   .   .

> Based upon all the evidence that you have in regards to the facts of this case, based upon all the evidence concerning the convictions in the UK, do you really believe he's not going to do it to another child? He has proven to you that if he's not locked up, he's going to molest children. That is why I submit to you that the appropriate punishment is life on the 'ag' sex and 20 years for the indecency.

The jury assessed the maximum sentence in Counts I and II. Appellant's conduct in the instant cases is certainly egregious, but we are unable to state with fair assurance that the erroneous

admission of the twelve prior convictions did not influence the jury in its assessment of punishment, or had but a slight effect.  We therefore sustain Issue Two.

### JURY ARGUMENT

In his final issue, Appellant contends that the trial court erred by failing to grant a mistrial after the State made an improper jury argument.  During closing argument at the guilt phase of trial, the following occurred:

> [The prosecutor]:  And it's crucial that you hold him accountable for his actions, because if you don't, you're putting other children at risk.  You simply are.  I know you don't want to hear that, but you are because of the way this man's mind works.  If you let him get away with it, it's going to progress.  He has proven that. When he got away with it before, it continued because no one stopped him.  And if he's not held accountable, it's going to continue.  He's going to feel bullet proof.  He's going to know no one is going to believe these kids.  I can do what I want.  I can continue this, and I can continue to get away with it.  *And this is not a habit that he can just turn on and off.  The way his mind is wired is different than yours* -- [Emphasis added].
>
> [Defense counsel]:  Objection, Your Honor.  There's no evidence to support that argument.
>
> [The Court]:  Sustained.
>
> [Defense counsel]:  Move to strike.  Move to instruct the jury to disregard, Your Honor.
>
> [The Court]:  Ladies and gentlemen, you will disregard the last comment of counsel.
>
> [Defense counsel]:  And, Your Honor, I also move for a mistrial.
>
> [The Court]:  Denied.

On appeal, Appellant argues that the highlighted portion of the prosecutor's argument is improper because it violated a motion in limine prohibiting the State from bringing up any

extraneous offenses without first approaching the bench for a ruling. Appellant did not, however, object to the argument on the basis that it violated the motion in limine. He instead objected that there was no evidence to support the argument.

To preserve a complaint for appellate review, the complaining party must show that the complaint was made to the trial court, by a timely request, objection, or motion that stated the grounds for the ruling with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. TEX.R.APP.P. 33.1(a)(1). The record must also show that the trial court ruled on the request, objection, or motion, either expressly or implicitly. TEX.R.APP.P. 33.1(a)(2). Further, the argument raised on appeal must comport with the objection made at trial or it is waived. *Wilson v. State*, 71 S.W.3d 346, 348 (Tex.Crim.App. 2002).

The entire basis for Appellant's argument on appeal regarding the denial of his request for a mistrial is that the prosecutor impermissibly violated the motion in limine by arguing that Appellant is a serial child molester. Appellant waived this argument because he failed to make it in the trial court. Issue Three is overruled.

Having overruled Issues One and Three, we affirm the judgment of conviction. Because we have sustained Issue Two, we reverse the sentences imposed for Counts I and II and remand for a new punishment hearing only. *See* TEX.CODE CRIM.PROC.ANN. art. 44.29(b)(West Supp. 2012).

August 7, 2013

ANN CRAWFORD McCLURE, Chief Justice

Before McClure, C.J., Rivera, and Antcliff, JJ.
Antcliff, J., not participating

(Do Not Publish)