ACCEPTED
01-14-00901-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
11/13/2015 3:35:47 PM
CHRISTOPHER PRINE
CLERK

NO. 01-14-00901-CR

IN THE COURT OF APPEALS
FOR THE FIRST DISTRICT OF TEXAS

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS
11/13/2015 3:35:47 PM
CHRISTOPHER A. PRINE
Clerk

TRAVIS LAMB
*Appellant*

v.

THE STATE OF TEXAS
*Appellee*

On Appeal from Cause No. 1394200
From the 351st Judicial District Court of Harris County, Texas

MOTION FOR REHEARING, OR IN THE ALTERNATIVE, MOTION TO PUBLISH

## I. THE PRESENCE OF ADULTERANTS OR DILUTANTS CANNOT BE USED ESTABLISH THE PRESENCE OF A CONTROLLED SUBSTANCE AT ABOVE-TRACE LEVELS

### A. The Controlled Substance Act and the definitions of "controlled substance" and "adulterants and dilutants"

The Controlled Substances Act defines "adulterant or dilutant" as: "any material that increases the bulk or quantity of a **controlled substance**, regardless of its effect on the chemical activity of the **controlled substance**." TEX. HEALTH & SAFETY CODE § 481.002(49). The Controlled Substance Act defines "controlled substance" as:

> "**a substance**, including a drug, an adulterant, and a dilutant, **listed in Schedules I through V or Penalty Groups 1, 1-A, or 2 through 4**. The term includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance."

TEX. HEALTH & SAFETY CODE § 481.002(5). While not the model of clarity, a fair reading of Section 481.002(5) requires that "controlled substance" must be listed in a schedule or penalty group. In the context of Appellant's case, the State must prove Appellant "possesse[d] a **controlled substance listed in Penalty Group 1**" and that "the amount of the **controlled substance** possessed is, by aggregate weight, **including adulterants or dilutants**, one gram or more but less than four grams." TEX. HEALTH & SAFETY CODE § 481.115(a, c).

In the context of Section 481.115, an "adulterant or dilutant" does not exist without outside of the presence of a controlled substance in penalty group 1. TEX. HEALTH & SAFETY CODE § 481.002(49); TEX. HEALTH & SAFETY CODE § 481.115(a, c). To use the quantity of "adulterant or dilutant" present in the evidence is to create a circular definition: an "adulterant or dilutant" is defined as a material mixed with a controlled substance, which would then be defined as any "adulterant or dilutant" mixed with a controlled substance. Such a definition is "completely circular and explains nothing." *See e.g. Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 323 (U.S. 1992). But ultimately, this circular definition is the one applied to Appellant's case

> Even accepting the merits of Appellant's reasoning, he cannot prevail. Regardless of the amount of cocaine present in the substance, it was present, and it was mixed with "adulterants and dilutants." See TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (defining "adulterants and dilutants"). Regardless of whether the amount of cocaine by itself would have constituted a trace amount, with the adulterants and dilutants, it was visible and weighed 1.77 grams. See *Melton*, 120 S.W.3d at 344 (holding State has to prove only that aggregate weight of controlled substance mixture, including adulterants and dilutants, equals alleged

minimum weight). Accordingly, there was sufficient evidence for the jury to determine that Appellant possessed more than one gram and less than four grams of cocaine. *See id.* This is not a trace amount. See *Shults*, 575 S.W.2d at 30 (defining trace amount to be quantity of substance possessed so small that it cannot be quantitatively measured).

*Lamb v. State*, 01-14-00901-CR, 2015 WL 6933120, at *3 (Tex. App.—Houston [1st Dist.] Nov. 10, 2015, no. pet. h.). While Appellant readily concedes that the quantity of "adulterants and dilutants" present in the crystalline substance can be qualitatively measured, the amount of cocaine, without the presence of which there would be no "adulterants or dilutants" or crime at all, is a trace amount which could not be established by sensitive laboratory devices operating under normal conditions.

**B. Nothing in *Seals* suggests that the aggregate weight of a mixture can be used to determine whether or not a controlled substance is only present in trace amounts**

The *Seals* court resolved the issues of the aggregate weight of the blood waste mixture and the presence of methamphetamine within the mixture independently. The Court noted that there was an unmeasured amount of methamphetamine in the blood waste mixture:

> The State's criminalist testified that the contents of the syringe weighed 0.05 grams and the contents of a vial weighed 1.50 grams. The criminalist said that, in addition to methamphetamine, the vial contained nicotinamide (vitamin B3) and blood. The criminalist did not say how much of the vial's 1.50 grams came from each of the three substances.

> The appellant admitted possessing less than a gram of methamphetamine. He testified that the vial contained mostly blood waste. According to the appellant, the vial was used to squirt blood and trace amounts of methamphetamine when he was unable to successfully inject the drug into his arm.

*Seals v. State*, 187 S.W.3d 417, 418 (Tex. Crim. App. 2005). The dissenting opinion explicitly noted that there was only a trace amount of methamphetamine in the blood waste mixture: "In this case, there is no evidence of any illicit use of the bloody mixture in the vial with traces of methamphetamine contained in it." *Seals v. State*, 187 S.W.3d 417, 426 (Tex. Crim. App. 2005) (J. Cochran, dissenting). *Seals* does not seem to treat the presence of methamphetamine in the blood as anything more than a trace amount of a controlled substance.

## C. This Court's holding sets a dangerous policy

This Court's holding that "[r]egardless of whether the amount of cocaine by itself would have constituted a trace amount, with the adulterants and dilutants, it was visible and weighed 1.77 grams" pushes the interpretation of the Controlled Substance Act further down a dangerous and slippery slope. Imagine this scenario: a law-abiding baker works in a local bakery. By the end of the baker's shift, her apron has a few noticeable splotches of flour. The baker throws the apron in the back of her car and rushes home. A police officer pulls the baker over for speeding 5 miles over the speed limit, notices the flour residue on the apron, suspects the visible residue to be cocaine, arrests the baker for possession of a controlled substance, and seizes the apron for testing. The laboratory technician carefully scrapes the flour off the apron and weighs 1.77 grams of flour. The laboratory technician runs four sensitive laboratory tests, none of which detect the presence of any controlled substance. The

laboratory technician concentrates the sample, and runs a second battery of tests and detects cocaine. The cocaine is an environmental contaminant or is residue spread to the baker when she handled customer's cash. **How does the baker vindicate her innocence?**

Under the typical "affirmative links" analysis as would be applied by this Court given the visible quantity of flour found in the baker's case, it is highly likely that the innocent baker would be found guilty. It would be enough for the State to show that the apron was in the baker's physical possession, the baker was present when the search was conducted, the flour was in plain view, the baker owned her car where the flour was found, and the car is enclosed. *See Evans v. State*, 202 S.W.3d 158, 162-163 (Tex. Crim. App. 2006) (providing an in-depth explanation of Texas's affirmative links doctrine). Under the stricter *King* standard, the mere possession of an immeasurable, invisible amount of cocaine would not support a conclusion that the baker was guilty. *King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995) ("when the quantity of a substance possessed is so small that it cannot be measured, there must be evidence other than mere possession to prove that the defendant knew the substance in his possession was a controlled substance").

As a rose by any other name would smell as sweet, calling the "cocaine" in this case anything other than low-concentration, trace evidence does not change its nature. The scientific techniques employed in this case like gas chromatography / mass spectroscopy can detect substances at stunningly low levels. But what the scientific

techniques cannot do is explain to a jury the significance of a finding. In Appellant's case, the laboratory technician's rather obtuse testimony about contamination did no more than confuse the jury about the significance of the detection of cocaine at such low levels within the crystalline substance. (4 R.R. at 77-79). While laboratory procedures may be crafted to prevent cross-transfer and contamination of evidence, such rigorous procedures are exceedingly unlikely adhered to by ordinary citizens or patrol officers (who often handle both controlled substances and evidence). The law must not merely seek to punish the guilty, it must seek to safeguard the innocent. *See Stone v. Powell*, 428 U.S. 465, 494 (1976) (All courts "have a constitutional obligation to safeguard personal liberties."). In order to safeguard the innocent from punishment for the accidental or unwitting possession of trace amounts of narcotics, this Court must treat the narcotics as trace evidence whether present as invisible residue or whether mixed with a "crystalline substance" which does not somehow externally alert the possessor that the "crystalline substance" may contain cocaine.

## II. THIS COURT SHOULD HAVE ADDRESSED APPELLANT'S DUE PROCESS ARGUMENT

### A. An argument to the sufficiency of the evidence is a due process argument

The doctrine of sufficiency of the evidence is carved directly from the Due Process Clause. It has long been held that "[t]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397

U.S. 358, 364 (1970). However, the Supreme Court struggled over how to ensure a defendant's due process protection against conviction on less than proof beyond a reasonable doubt was appropriately vindicated on appeal. The sufficiency standard set forth in *Jackson* "suppl[ies] a workable [and] predictable standard for determining whether the due process command of *Winship* has been honored." *Jackson v. Virginia*, 443 U.S. 307, 320 (1979). When setting forth the standard for sufficiency of the evidence, the *Jackson* court explicitly balanced the factfinding power of the jury with the due process rights of the defendant: "[t]he criterion thus impinges upon 'jury' discretion only to the extent necessary to guarantee the fundamental protection of due process of law." *Id.* at 319. Applying syllogistic reasoning, Appellant raised the issue of sufficiency of the evidence, sufficiency of the evidence is a doctrine carved from due process protections, therefore Appellant asserted his due process rights on appeal.

**B. An argument to the sufficiency of the evidence is an argument that the evidence supporting a conviction is of inadequate quality**

In *Brooks*, the Court of Criminal Appeals explained that sufficiency of the evidence is synonymous with the quality of the evidence:

> Legal sufficiency of the evidence is a test of adequacy, not mere quantity. Sufficient evidence is "such evidence, in character, weight, or amount, as will legally justify the judicial or official action demanded." Black's Law Dictionary 1285 (5th ed.1979). In criminal cases, only that evidence which is sufficient in character, weight, and amount to justify a factfinder in concluding that every element of the offense has been proven beyond a reasonable doubt is adequate to support a conviction.
> [...]
> As Justice Harlan explained in his *Winship* concurrence, although the phrases "preponderance of the evidence" and "proof beyond a

reasonable doubt" are quantitatively imprecise, they do communicate to the finder of fact different notions concerning the degree of confidence he is expected to have in the correctness of his factual conclusions. Justice Harlan noted that "[t]he preponderance test has been criticized, justifiably in my view, when it is read as asking the trier of fact to weigh in some objective sense the quantity of evidence submitted by each side rather than asking him to decide what he believes most probably happened." Indeed, that is precisely why the standard of proof and review in criminal cases has been expressed, not by the quantity of evidence produced or how it might be weighed when viewed neutrally, but rather by the quality of the evidence and the level of certainty it engenders in the factfinder's mind.

Legal sufficiency of the evidence in a criminal proceeding may be divided into two zones: evidence of such sufficient strength, character, and credibility to engender certainty beyond a reasonable doubt in the reasonable factfinder's mind and evidence that lacks that strength. Appellate review of a jury's verdict of criminal conviction focuses solely on that "either-or" character of evidentiary sufficiency because a defendant is entitled to an acquittal if the evidence lacks that strength.

*Brooks v. State*, 323 S.W.3d 893, 917-918 (Tex. Crim. App. 2010) (citations omitted).

Once again, applying the same syllogistic reasoning used above, Appellant raised the issue of sufficiency of the evidence, sufficiency of the evidence measures the quality of the evidence before the appellate court, therefore Appellant asserted that the quality of the evidence supporting Appellant's conviction was inadequate.

## C. The Court should not have distinguished between challenging the sufficiency of the evidence and challenging the quality of the evidence

This Court did not fully address Appellant's sufficiency argument, holding that Appellant's arguments under the due process clause were not part of Appellant's primary brief:

In his reply brief, Appellant argues that due process requirements put limits on what constitutes an adulterant or dilutant and on the quality of

> evidence that will support a conviction for possession of a controlled substance. Appellant's due process arguments were not raised in his primary brief. An appellant cannot raise issues raised for the first time in a reply brief. *See* Tex. R. App. P. 38.3 (limiting reply brief to addressing matters raised in appellee's brief); *Barrios v. State,* 27 S.W.3d 313, 322 (Tex.App.—Houston [1st Dist.] 2000, pet. ref'd) (rejecting review of argument raised for first time in reply brief).

*Lamb v. State*, 01-14-00901-CR, 2015 WL 6933120 at *4 (Tex. App.—Houston [1st Dist.] Nov. 10, 2015, no. pet. h.). By distinguishing between Appellant's sufficiency argument and the due process argument, the Court seems to make a distinction between doctrines which are identical in the context of a sufficiency analysis. Section I(D) of Appellant's brief  focused on the lack of evidence that would suggest anyone in Appellant's shoes could or should believe that the crystalline substance contained cocaine and that even using sensitive laboratory techniques, it was impossible to detect any illicit drugs within the crystalline substance. Section I(E) of Appellant's brief focused on the reasons why the judicial interpretation of Texas's Controlled Substances Act, as it currently stands, is ultimately unworkable and unconstitutional. Appellant argued that the Appellate Courts must draw a firmer line to distinguish between the possession of narcotics and the innocent possession of narcotics residues as well as to ensure the fairness and rationality of the definition of adulterant or dilutant. Appellant believes addressing the quality of the evidence in this case in light of Appellant's due process protections is necessary for a full and fair resolution of Appellant's case.

**PRAYER**

Appellant prays that this Court reconsider and withdraw its opinion in 01-14-00901-CR. In the alternative, Appellant prays that this Court publishes the opinion Appellant's case.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas

**/s/** Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender
Harris County Texas
1201 Franklin Street, 13th Floor
Houston Texas 77002
(713) 368-0016
(713) 386-9278 fax
TBA No. 24059981
nicolas.hughes@pdo.hctx.net

**CERTIFICATE OF SERVICE**

I certify that a copy of this Appellant's Motion for Rehearing / Motion to Publish Brief (Lamb) has been served upon the Harris County District Attorney's Office – Appellate Section, on November 13, 2015, by electronic service.

**/s/** Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the page and word count limitations of TEX. R. APP. P. 9.4(i), if applicable, because it contains 2,460 words excluding portions not to be counted under TEX. R. APP. P. 9.4(i)(1).

/s/ Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender